# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

AMJAD YASSIN,

                  Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                  Defendant.

No. 12-CV-1712
(LEK/CFH)

---

**APPEARANCES:**

OLINSKY LAW GROUP
Attorney for Plaintiff
300 South State Street
5th Floor, Suite 520
Syracuse, New York 13202

HON. RICHARD S. HARTUNIAN
United States Attorney for the
   Northern District of New York
Attorney for Defendant
100 South Clinton Street
Syracuse, New York 13261-7198

**OF COUNSEL:**

HOWARD D. OLINSKY, ESQ.

KRISTINA D. COHN, ESQ.
Special Assistant United States Attorney

ROBERT R. SCHRIVER, ESQ.
Special Assistant United States Attorney

**CHRISTIAN F. HUMMEL**
**U.S. MAGISTRATE JUDGE**

## REPORT-RECOMMENDATION and ORDER[1]

Plaintiff Amjad Yassin ("Yassin") brings this action pursuant to 42 U.S.C.

§ 405(g) and § 1383(c)(3) seeking review of a decision by the Commissioner of Social

Security ("Commissioner") denying his application for benefits under the Social Security

Act. Compl. (Dkt. No. 1). Yassin moves for a finding of disability and the

---

[1] This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(d).

Commissioner cross-moves for a judgment on the pleadings.  Dkt. Nos. 10, 11.  For the following reasons, it is recommended that the Commissioner's decision be affirmed.

## I.  Background

### A.  Facts

Born August 12, 1971, Yassin was thirty-eight years old when he applied for disability benefits.  Tr. at 134.[2]  Yassin graduated from high school in Iraq, has limited knowledge of the English language, cannot read the newspaper, and requires an interpreter on a daily basis.  Tr. at 31, 33–34, 136, 138, 142.  Yassin was previously employed as a jewelry maker in Iraq and Syria and an optical lens inserter in the United States.  Tr. at 35, 39–41, 45.  Yassin alleges disability from a heart condition and a history of asthma.  Tr. at 37–38, 139.

### B.  Procedural History

On September 21, 2009, Yassin filed an application for social security income ("SSI") pursuant to the Social Security Act, 42 U.S.C. § 401 et seq. claiming an alleged onset date of January 1, 1999.  Tr. 134.  That application was denied on November 30, 2009.  Tr. 19, 61–67.  Yassin requested a hearing before an administrative law judge ("ALJ"), Barry Peffley, which was held on February 8, 2011.  Tr. 16–28, 29–54 (transcript of the administrative hearing).  In a decision dated April 5, 2011, the ALJ found that Yassin was not entitled to disability benefits.  Tr. 19–28.  Yassin's counsel

---

[2]  "Tr." followed by a number refers to the pages of the administrative transcript filed by the Commissioner.  Dkt. No. 9.

filed a timely request for review with the Appeals Council and on October 23, 2012, the request was denied, thus making the ALJ's findings the final decision of the Commissioner.  Tr. 1–5.  This action followed.

## II.  Discussion

### A.  Standard of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision.  Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982).  Substantial evidence is "more than a mere scintilla," meaning that in the record one can find "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Halloran v. Barnhart, 362 F.3d 28, 31 (2d Cir. 2004) (citing Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal citations omitted)).

"In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision."  Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 72 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).  However, a court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).  If the Commissioner's finding is supported by substantial evidence, it is conclusive.  42 U.S.C. § 405(g) (2006); Halloran, 362 F.3d at 31.

## B. Determination of Disability[3]

"Every individual who is under a disability shall be entitled to a disability. . . benefit. . . ." 42 U.S.C. § 423(a)(1) (2004).  Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." Id. § 423(d)(1)(A).  A medically determinable impairment is an affliction that is so severe that it renders an individual unable to continue with his or her previous work or any other employment that may be available to him or her based upon age, education, and work experience.  Id. § 423(d)(2)(A).  Such an impairment must be supported by "medically acceptable clinical and laboratory diagnostic techniques." Id. § 423(d)(3).  Additionally, the severity of the impairment is "based [upon] objective medical facts, diagnoses or medical opinions inferable from [the] facts, subjective complaints of pain or disability, and educational background, age, and work experience." Ventura v. Barnhart, No. 04-CV-9018(NRB), 2006 WL 399458, at *3 (S.D.N.Y. Feb. 21, 2006)[4] (citing Mongeur v. Heckler, 722 F.2d 1033, 1037 (2d Cir. 1983)).

The Second Circuit employs a five-step analysis, based upon 20 C.F.R. § 404.1520,

---

[3] While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3)(SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance ("SSDI")), are identical, so that "decisions under these sections are cited interchangeably." Donato v. Sec'y of Health and Human Servs., 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

[4] All unpublished opinions cited to by the Court in this Report-Recommendation are, unless otherwise noted, attached to this Recommendation.

to determine whether an individual is entitled to disability benefits:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity. If he [or
> she] is not, the [Commissioner] next considers whether the
> claimant has a 'severe impairment' which significantly limits
> his [or her] physical or mental ability to do basic work
> activities. If the claimant suffers such an impairment, the
> third inquiry is whether, based solely on medical evidence,
> the claimant which is listed in Appendix 1
> of the regulations. If the claimant has such an impairment,
> the [Commissioner] will consider him [or her] disabled
> without considering vocational factors such as age,
> education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a 'listed'
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment,
> the fourth inquiry is whether, despite the claimant's severe
> impairment, he [or she] has the residual functional capacity
> to perform his [or her] past work. Finally, if the claimant is
> unable to perform his [or her] past work, the [Commissioner]
> then determines whether there is other work which the
> claimant could perform.

Berry, 675 F.2d at 467. The plaintiff bears the initial burden of proof to establish each

of the first four steps. DeChirico v. Callahan, 134 F.3d 1177, 1179–80 (2d Cir. 1998)

(citing Berry, 675 F.2d at 467). If the inquiry progresses to the fifth step, the burden

shifts to the Commissioner to prove that the plaintiff is still able to engage in gainful

employment somewhere. Id. at 1180 (citing Berry, 675 F.2d at 467).


### C. ALJ Peffley's Findings

Yassin, represented by counsel, testified at a hearing held on February 8, 2011 with

the assistance of an Arabic interpreter Taima Yagan, in addition to an impartial

vocational expert ("VE") Mina Schwartz. Tr. 29–54 (transcript of the administrative

hearing). Using the five-step disability sequential evaluation, the ALJ found that Yassin:

(1) had engaged in substantial gainful activity from March 2010 to December 2010 as a

lens inserter but there was a continuous twelve-month period during which Yassin did

not engage in substantial gainful activity; (2) had severe medically determinable

impairments of mitral valve prolapse[5] and a history of asthma which cause more than a

minimal effect on Yassin's ability to perform basic work activities; (3) did not have an

impairment, alone or in combination, sufficient to meet the listed impairments in

Appendix 1, Subpart P of Social Security Regulation Part 404; (4) maintains

> the residual functional capacity [("RFC")] to perform light
> work as defined in 20 CFR 416.967(b)[6] except [that Yassin]
> may only occasionally climb ramps or stairs[,] never climb
> ladders, ropes, or scaffolds[,] . . . must avoid all
> concentrated exposure to operational control of moving
> machinery and unprotected heights[,] and avoid all
> concentrated exposure to irritants such as fumes, odors,
> dust, gases, poorly ventilated areas.  [Yassin] is limited to
> simple, routine, and repetitive tasks involving only simple,

---

[5]  The mitral valve is "the valve between the left atrium and left ventricle of the
heart."  Nelson v. Astrue, 610 F. Supp. 2d 1070, 1073 (C.D. Cal. 2009) (citing
DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 1930 (hereinafter "Dorland's")).  Mitral
valve prolapse is "redundancy or hooding of mitral valve leaflets so that they prolapse
into the left atrium, often causing mitral regurgitation[.]"  Id. (citing Dorland's at 1466).

[6]  According to the Code of Federal Regulations,

> Light work involves lifting no more than 20 pounds at a time
> with frequent lifting or carrying of objects weighing up to 10
> pounds.  Even though the weight lifted may be very little, a
> job in this category requires a good deal of walking or
> standing, or when it involves sitting most of the time with
> some pushing and pulling of arm and leg controls. . . . If
> someone can do light work, we determine that he or she can
> also do sedentary work, unless there are additional limiting
> factors such as loss of fine dexterity or inability to sit for long
> periods of time.

20 C.F.R. § 416.967(b).

> work-related decisions[,] with few, if any, work place
> changes.  [Yassin] must work in a low stress job, defined as
> having only occasional decision making required and only
> occasional changes in the work setting.  [Yassin] does not
> read or write the English language[;]

(5) could perform past relevant work; and (6) given his age, education, work experience, and RFC, was capable of engaging in employment which exists in significant numbers in the national economy.  Tr. 21–25.  Therefore, a determination of not disabled was made.

### D.  Yassin's contentions

Yassin first contends that the ALJ's RFC determination was not supported by substantial evidence because the ALJ (1) gave inappropriate weight to the medical opinions of the examining physicians and consultative examiner and (2) failed to set forth an explicit function-by-function analysis.  Yassin next contends that the ALJ erred in discounting Yassin's credibility.  Yassin then asserts that the ALJ's determination of Step 4 was not supported by substantial evidence.  Yassin lastly claims that the ALJ failed to support the Step 5 conclusion with substantial evidence.

### 1.  RFC

Yassin contends that the ALJ's RFC determination was not supported by substantial evidence.  RFC describes what a claimant is capable of doing despite his or her impairments considering all relevant evidence, which consists of physical limitations, symptoms, and other limitations beyond the symptoms.  Martone v. Apfel, 70 F. Supp.

2d 145,150 (N.D.N.Y. 1999); 20 C.F.R. §§ 404.1545, 416.945. "In assessing RFC, the ALJ's findings must specify the functions plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." Martone, 70 F. Supp. 2d at 150. RFC is then used to determine whether the claimant can perform his or her past relevant work in the national economy. New York v. Sullivan, 906 F.2d 910, 913 (2d Cir. 1990); 20 C.F.R. §§ 404.1545, 416.960 (2003). The Second Circuit has clarified that, in Step 5 of the Commissioner's analysis, once RFC has been determined "the Commissioner need only show that there is work in the national economy that the claimant can do; he need not provide additional evidence of the claimant's [RFC]." Pourpre v. Astrue, 566 F.3d 303, 306 (2d Cir. 2009).

> Each finding as to the plaintiff's functional abilities must be supported by substantial evidence because conclusory statements regarding plaintiff's capacities are not sufficient . . . Only after the ALJ has described the plaintiff's capabilities on a function-by-function basis supported by substantial evidence may RFC then be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

DiVetro v. Comm'r of Soc. Sec., No. 05-CV-830 (GLS/DEP), 2008 WL 3930032, at *2 (N.D.N.Y. Aug. 21, 2008) (internal quotation marks and citations omitted).


### i. Treating Physicians

The Second Circuit defines a "treating physician" as one "who has provided the [claimant] with medical treatment or evaluation, and who has or had an ongoing treatment and physician-patient relationship with the individual." Sokol v. Astrue, No. 04-CV-6631 (KMK) (LMS), 2008 WL 4899545, at *12 (S.D.N.Y. Nov. 12, 2008) (citing

Schisler v. Bowen, 851 F.2d 43, 46 (2d Cir. 1988) (internal quotation marks omitted)).

In determining whether a physician qualifies as a treating physician, the court conducts a case-specific analysis based on the nature of the relationship between the patient and physician. Id. (citing Arnone v. Bowen, 882 F.2d 34, 41 (2d Cir. 1989)). In his decision, the ALJ gave "[s]ome weight . . . to the opinions of [Yassin's] treating physicians, as their observations did not include more than minimal limitations and they were largely consistent with the objective medical evidence." Tr. 23. Yassin contends that it was error for the ALJ to assign such weight because the record lacks such opinions. Pl.'s Mem. of Law (Dkt. No. 10) at 11.

Here, the record is devoid of any treating physician's medical opinion. "[A]n ALJ is not required to discuss in depth every piece of evidence contained in the record, so long [as] the evidence of record permits the Court to glean the rationale of an ALJ's decision." LaRock ex. rel. M.K. v. Astrue, No. 10-CV-1019 (NAM/VEB), 2011 WL 1882292, at *7 (N.D.N.Y. Apr. 29, 2011) (citing Mongeur v. Heckler, 722 F.2d 1033,1040 (2d Cir. 1983) (internal quotation marks omitted)). The record reveals that Dr. Kuzbari saw Yassin only once in June 2009[7] when Dr. Kuzbari noted that Yassin's electrocardiogram ("EKG") showed inferior changes related to a mitral valve prolapse rather than a cardiac ischemia[8] and that Yassin required no more than 100 mg of

---

[7] The ALJ erred in stating that Dr. Kuzbari's medical notes were dated May 2009 from Iraq when in fact they are dated June 2009 from Syria. Tr. 23, 205–07.

[8] "Ischemia refers generally to '[l]ocal anemia due to mechanical obstruction (mainly arterial narrowing or disruption) of the blood supply [,] and myocardial ischemia is the 'inadequate circulation of blood to the myocardium, usually as a result of coronary artery disease.'" Fagan v. Astrue, No. 02-CV-8533(CM)(MHD), 2008 WL 4703230, at *2 n.5 (S.D.N.Y. Sept. 2, 2008) (citing THE PHYSICIANS' DESK REFERENCE MEDICAL

Aspirin daily.  Tr. 205.  Similarly, Dr. Naseem[9] only treated Yassin's complaints of chest pains over the course of three days in November 2009 at St. Joseph's Hospital Health Center ("St. Joseph's).  Tr. 212, 215–16.  Dr. Naseem opined that a chest x-ray showed no acute cardiopulmonary process and an EKG revealed normal sinus rhythm.  Id.  Dr. Naseem discharged Yassin and instructed him to take 81 mg of Aspirin daily.  Tr. 215.  "Doctors who see a patient only once do not have a chance to develop an ongoing relationship with the patient, and therefore are not generally considered treating physicians."  Garcia v. Barnhart, No. 01-CV-8300 (GEL), 2003 WL 68040 (S.D.N.Y. Jan. 7, 2013) (citing Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) and Jones v. Apfel, 66 F. Supp. 2d 518, 525 (S.D.N.Y. 1999)).  Since there is no evidence that Yassin saw either Dr. Kuzbari or Dr. Naseem for more than one medical incident or episode, they are not considered treating sources who had an ongoing treatment and physician-patient relationship with Yassin.  Sokol, 2008 WL 4899545, at *12.

Nevertheless, both Dr. Kuzbari or Dr. Naseem supported their findings with objective evidence, namely EKGs and x-ray.  A reasonable mind would accept such evidence as adequate to support the ALJ's conclusion that the physicians' observations did not include more than minimal limitations on Yassin's part and were largely consistent with the objective medical evidence.  Halloran, 362 F.3d at 31.  As such, the ALJ's

---

DICTIONARY 924 (2d Ed. 2000)).

[9]  The medical records from St. Joseph's Hospital Health center show a doctor named "Parvaiz Naseem" and another named "Naeem Humayun."  Tr. at 212, 217. Whether or not the two names refer to the same doctor, their treatment for Yassin was limited to the period between November 14, 2009 and November 16, 2009.  Tr. 215 (showing admit and discharge dates).

assignment of some weight to Yassin's examining physicians is supported by

substantial evidence. Accordingly, any fault in designating these physicians as Yassin's

"treating physicians" is harmless error.[10]

Accordingly, the Commissioner's decision on this issue should be affirmed.


### ii.  Consultative Examiner ("CE")

Yassin next contends that the ALJ erred in giving the CE Dr. Ali's opinion "great

weight" because the opinion is vague and incomplete.  Pl.'s Mem. of Law at 11.  Yassin

contends that although Dr. Ali opined Yassin "should avoid activities that require

moderate or greater exertion," Dr. Ali failed to explain what constitutes "moderate or

---

[10]  The Court notes the defendant's concern that at the administrative hearing, (Def.'s Mem. of Law (Dkt. No. 11) at 12), the ALJ had granted Yassin time to submit additional medical records. Tr. 52–53. At the end of the administrative hearing, Yassin's counsel advised the ALJ that Yassin was awaiting medical records from a Dr. Cronkite, a family doctor who was seeing Yassin every six months. Tr. 37, 53. On February 24, 2011, Yassin's counsel requested an additional two weeks to submit medical records. Id. at 190. No additional evidence was submitted. The ALJ issued a determination on April 5, 2011. Id. 16.

An ALJ has "an affirmative duty to develop the record and seek additional information from the treating physician, sua sponte, . . . to determine upon what information the treating source was basing his opinions." Harris v. Colvin, No. 11-CV-1467, 2013 WL 5278718, at *6 (N.D.N.Y. Sept. 18, 2013) (citations omitted); see also Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "The ALJ's duty to supplement a claimant's record is triggered by ambiguous evidence, the ALJ's finding that the record is inadequate or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous." Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (citations omitted).

Here, Yassin presented no medical records from a treating physician since he arrived in the United States and he bears the initial burden of proof to establish each of the first four steps. DeChirico, 134 F.3d at 1179–80. Furthermore, Yassin does not contend that the ALJ had failed recontact any treating physician to fully develop the record. Moreover, the administrative record contains sufficient and non-ambiguous evidence to make a fair determination. See subsection II(D). Given these reasons, any contention that the ALJ should have developed the record is meritless.

greater exertion." Id. at 12 (citing Tr. at 23, 210). Furthermore, Yassin contends that Dr. Ali failed to assess any of Yassin's functional limitations. Id.

To support his argument, Yassin cites to Dickson v. Comm'r of Soc. Sec., No. 04-CV-1296 (NAM/RFT), 2008 WL 553208 (N.D.N.Y. Feb. 27, 2008) (citing Curry v. Apfel, 209 F.3d 117, 123 (2d Cir. 2000)) (Dkt. No. 10-1 at 35–42). The Curry court held the CE's use of the terms "mild" or "moderate," without additional information, to describe a claimant's physical condition was vague, which cannot be relied upon in determining a plaintiff's ability to work. Curry, 209 F.3d at 123. Here, Dr. Ali made specific findings based on a physical examination of Yassin. Tr. at 209–12. Dr. Ali provided a medical source statement opining that because of Yassin's cardiac history, he should avoid activities requiring moderate or greater exertion. Tr. at 211. Dr. Ali noted that Yassin cooks three times a week, cleans sometimes and shops once a week, cares for his children daily, showers himself three times a week, dresses himself daily, watches television, listens to the radio, reads, and socializes with friends. Tr. at 209. Dr. Ali further noted that Yassin had a heart attack and complaints of chest pains that radiate to the arm, and shortness of breath. Tr. at 208. However, Dr. Ali also remarked that Yassin has a normal gait and stance, normal chest and heart examinations, a full range of motion and strength throughout the body, no neurological deficiency, no muscle atrophy, 5/5 strength in upper and lower extremities, and 5/5 grip strength bilaterally in his hands. Tr. at 209–11. As such, Dr. Ali's opinion was not vague and incomplete as he made unequivocal findings to support his opinion. Graves v. Astrue, No. 12-CV-48, 2013 WL 4779193, at *23 (N.D.N.Y. Sept. 5, 2013) (finding CE's opinion not vague when CE discussed plaintiff's daily activities and exertional limitations despite the lack

of an express function-by-function analysis).  Thus, the ALJ was not precluded from

according the CE's opinion great weight.

Accordingly, the Commissioner's decision on this issue should be affirmed.


### iii.  Physical Function-by-Function Analysis

Yassin contends that the ALJ erred by failing to set forth a physical function-by-

function analysis before classifying his RFC.  Pl.'s Mem. of Law at 12–13 (citing Tr. at

22).

A function-by-function analysis requires the ALJ to express "the RFC . . . [not] in

terms of the exertional categories of 'sedentary,' 'light,' 'medium,' 'heavy,' and 'very

heavy' . . . .," but instead in terms "of the individual's physical and mental capacities," so

that it is "possible to determine whether the individual is able to do past relevant work . .

. ."  SSR 96-8p.  These functions include physical abilities such as "sitting, standing,

walking, lifting, carrying, pushing, pulling," and mental abilities such as "understanding,

remembering, carrying out instructions, and responding appropriately to supervision,"

and other abilities such as "the ability to tolerate environmental factors."  Cichocki v.

Astrue, 729 F.3d 172, 176 (2d Cir. 2013) (citing 20 C.F.R. §§ 404.1545, 416.945, SSR

96-8p).  In this Circuit, an ALJ's failure to perform a function-by-function analysis does

not necessitate a per se remand.  Id. at 177.  Rather, "the relevant inquiry is whether

the ALJ applied the correct legal standards and whether the ALJ's determination is

supported by substantial evidence."  Id.

In this case, the ALJ did not perform an explicit function-by-function analysis but

addressed all relevant limitations.  Moreover, the ALJ's conclusion is supported by

substantial evidence.  First, in determining Yassin's physical limitations, the ALJ relied on Yassin's disability benefits application where Yassin indicates he suffers from chest pain and a heart condition, which cause him difficulty in lifting objects.  Tr. at 22. Yassin was a competitive runner in Iraq and had a heart attack after a run.  Id.  Yassin was advised to avoid running and anything that overworked his heart muscle.  Id.  The ALJ noted Yassin's testimony, that Yassin experiences shortness of breath and chest pains that radiate to the left arm and fingers.  Id.  The ALJ cited to Dr. Kuzbari's medical assessment that Yassin was able to travel because his coronary angiogram, left atrium root, aortic root, aortic valve, right sided and heart chambers were normal and Yassin did not require any medical treatment other than Aspirin.  Tr. at 23.  The ALJ next cited Dr. Ali's assessment that Yassin has chest pains which resolves on its own, takes care of personal daily activities, has a normal gait, is able to change clothes, gets on and off the exam table, and walks on his heels and toes without difficulty.  Id.  Further, the ALJ relied on Yassin's medical records from St. Joseph's where an x-ray revealed no acute cardiopulmonary process, an EKG showing normal sinus rhythm, and a diagnosis of stress as a cause for the chest pains.  Id.

Second, with respect to mental abilities, the ALJ noted that Yassin had difficulty concentrating and anxiety in adjusting to his life in the United States.  Tr. at 22.  The ALJ also noted that Yassin had quit working as a lens inserter because of work pressure and a hostile environment.  Id.  There is no record evidence indicating that Yassin could not perform his previous work because of his heart or asthma conditions. Furthermore, the ALJ noted that Yassin is a former citizen of Iraq, cannot read, write or speak English, and required an interpreter for the administrative hearing.  Id.

14

Given the above examination of the evidence of Yassin's relevant limitations and restrictions, the ALJ concluded that Yassin's impairments did not preclude him from light work subject to certain limitations. Tr. at 22. The ALJ concluded that Yassin may only occasionally climb ramps or stairs, never climb ladders, ropes, or scaffolds, must avoid all concentrated exposure to operational control of moving machinery and unprotected heights, avoid all concentrated exposure to irritants. Tr. at 23. Further, Yassin is limited to routine tasks involving simple work-related decisions, few work place changes, low stress jobs defined as having only occasional decision making required and occasional changes in the work setting. Id. This determination is supported by the substantial evidence as stated above.

Accordingly, the Commissioner's decision on this issue should be affirmed.

### 2. Yassin's Credibility

The ALJ determines whether an ailment is an impairment based on a two-part test. First, the ALJ must decide, based upon objective medical evidence, whether "there [are] medical signs and laboratory findings which show . . . medical impairment(s) which could reasonably be expected to produce [such] pain. . . ." Barringer v. Comm'r of Soc. Sec., 358 F. Supp. 2d 67, 81 (N.D.N.Y. 2005); 20 C.F.R. § 404.1529 (2003). This primary evaluation includes subjective complaints of pain. 20 C.F.R. § 404.1529 (2003). "'Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity, persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.'" Barringer, 358 F. Supp. 2d at 81 (quoting Crouch v. Comm'r of Soc.

15

<u>Sec. Admin.</u>, No. 01-CV-0899 (LEK/GJD), 2003 WL 22145644, at *10 (N.D.N.Y. Sept. 11, 2003).

An ALJ must consider all symptoms, including pain, and the extent to which these symptoms are consistent with the medical and other evidence.  20 C.F.R. § 404.1529 (2003).  "Pain itself may be so great as to merit a conclusion of disability where a medically ascertained impairment is found, even if the pain is not corroborated by objective medical findings."  <u>Rivera v. Schweiker</u>, 717 F.2d 719, 724 (2d Cir. 1983) (citing <u>Gallagher v. Schweiker</u>, 697 F.2d 82, 84 (2d Cir. 1983)).  However, "disability requires more than mere inability to work without pain."  <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1552 (2d Cir. 1983).  Pain is a subjective concept  "difficult to prove, yet equally difficult to disprove" and courts should be reluctant to constrain the Commissioner's ability to evaluate pain.  <u>Dumas v. Schweiker</u>, 712 F.2d 1545, 1552 (2d Cir. 1983).  In the event there is "conflicting evidence about a [claimant's] pain, the ALJ must make credibility findings."  <u>Snell v. Apfel</u>, 177 F.3d 128, 135 (2d Cir. 1999) (citing <u>Donato v. Sec'y of HHS</u>, 721 F.2d 414, 418-19 (2d Cir. 1983)).  Thus, the ALJ may reject the claims of disabling pain so long as the ALJ's decision is supported by substantial evidence.  <u>Aponte v. Sec'y of HHS</u>, 728 F.2d 588, 591 (2d Cir. 1984).

The claimant's credibility and motivation, as well as the medical evidence of impairment, are used to evaluate the true extent of the alleged pain and the degree to which it hampers the applicant's ability to engage in substantial gainful employment. <u>See</u> <u>Marcus v. Califano</u>, 615 F.2d 23, 27 (2d Cir. 1978).  The ALJ must consider several factors pursuant to 20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3):

> (i)  [The claimant's] daily activities;

(ii)  The location, duration, frequency, and intensity of [the claimant's] pain or other symptoms;

(iii) Precipitating and aggravating factors;

(iv)  The type, dosage, effectiveness, and side effects of any medication [the claimant] take[s] or ha[s] taken to alleviate . . . pain or other symptoms;

(v) Treatment, other than medication, [the claimant] receive[s] or ha[s] received for relief of . . . pain or other symptoms;

(vi) Any measures [the claimant] use[s] or ha[s] used to relieve . . . pain or other symptoms (e.g., lying flat on [his] back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii) Other factors concerning [the claimant's] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (2003).

In this case, the ALJ concluded that Yassin's medically determinable impairments could reasonably be expected to cause the alleged symptoms but that the objective evidence did not indicate the impairments were as severe as alleged.  Tr. at 22.  The ALJ found that Yassin "[took] care of all of his activities of daily living," was able to return to work full-time and only quit due to a social conflict, and did not receive treatment for his alleged disability.  Tr. at 23.

Here, the ALJ noted that the objective medical evidence, the EKGs and x-ray, were generally normal and relatively unremarkable and Yassin's chest pains are likely caused by stress and treated with Aspirin.  The ALJ turned to Yassin's daily activities. Yassin's disability application indicated that his daily routine includes helping his children to prepare for school, attending school himself as well to Jobs-Plus, returning

home to prepare lunch for his children, helping his children with homework, watching television, then going to sleep.  Tr. at 147, 151.  Yassin indicated he shaves, eats, and uses the restroom without assistance.  Tr. at 148.  Yassin also indicated he could cook and perform other activities as long as he takes breaks.  Id.  Yassin travels outside on a daily basis by feet, public transportation, or bicycle.  Tr. at 149.  Yassin also testified that he acquired a driver's license and only experiences chest pains during long drives/rides.  Tr. 36.  Yassin goes grocery shopping once a week, which takes thirty to sixty minutes.  Tr. at 150.  Yassin watches television, visits friends twice a week, reads, and listens to the radio.  Tr. at 150–51.  Yassin further reported that he has no difficulty sitting, reaching, and using his hands.  Tr. at 151.  Yassin's testimony did not change when he was interviewed by Dr. Ali.  Dr. Ali indicated Yassin cooks three times a week, cleans sometimes, shops once a week, takes care of his children daily, showers three times a week, dresses himself daily, watches television, listens to the radio, reads, and socializes with friends.  Tr. at 209.

Yassin contends that the ALJ failed to consider Yassin's need:  (1) for his children to help him complete daily activities such as cleaning and cooking; (2) to sit when he dresses or bathe himself; (3) to ask his children to check on him every five minutes while he is bathing; and (4) for someone to be close by in case he becomes unconscious due to his heart condition.  Pl.'s Mem. of Law at 14 (citing Tr. at 147–48).  While it is true "that a claimant need not be an invalid to be found disabled," in this case Yassin was able to engage in activities comparable to those required of a light job with certain modifications.  Balsamo v. Chater, 142 F.3d 75, 81 (2d Cir. 1998) (citation and internal quotation marks omitted).  Yassin's representations indicate an ability to do a

varied amount of activities throughout the day, given the ability for intermittent breaks, which the ALJ considered given his conclusion of light work with modifications. These capabilities are not indicative of an individual unable to sustain himself throughout the workday. Rivera v. Harris, 623 F.2d 212, 215–16 (2d Cir. 1980) (finding that a claimant's ability, "despite her pains and shortness of breath, [that] she can cook, sew, wash and shop, so long as she does these chores slowly and takes an afternoon rest . . . did not preclude the possibility that she could perform gainful activity of a light, . . . nature."). The ALJ's reliance on Yassin's abilities to complete these daily activities, which were supported by substantial evidence, was not erroneous in determining that Yassin's allegations of intensity, persistence, and limiting effects of his symptoms were inconsistent with the objective medical evidence.

Yassin next contends that the ALJ erred in drawing negative inferences as to his credibility based on lack of treatment because as a refugee, he had difficulty establishing medical treatment in the United States. Pl.'s Mem. of Law at 15. A plaintiff's unexplained failure to seek treatment may support an inference that the effects of his conditions are not as severe as alleged. Toro v. Chater, 937 F. Supp. 1083, 1093 (S.D.N.Y. 1996). In drawing such a negative inference, the ALJ must first explore and consider any explanation for it. SSR 96-7p; Campbell v. Astrue, 596 F. Supp. 2d 446, 454 (D. Conn. 2009). Courts have found that such a negative inference may be appropriately explained if the lack of treatment is related to finances, Ebert v. Astrue, No. 07-CV-1166 (LEK/DEP), 2009 WL 3764219, at *7 n.6 (N.D.N.Y. Nov. 10, 2009), or mental impairments. Snetselaar v. Astrue, 588 F. Supp. 2d 1030, 1048 (W.D. Mo. 2008).

Here, the ALJ's decision did not explore Yassin's reasons for the lack of treatment. Although Yassin reported to Dr. Ali that he occasionally did not take the medication that had been prescribed for him in Iraq, Yassin did report that he was taking Aspirin to treat his chest pains. Tr. 208–09. Furthermore, Yassin explained that he was undergoing stress in attempting to adjust to a new culture and country. Pl.'s Mem. of Law at 15. (citing Tr. at 212). These explanations were contained in the record but never explored. Thus, in this regard, the ALJ erred in drawing a negative inference against Yassin's credibility. However, such an error is harmless because substantial evidence, as discussed supra, supports the ALJ's adverse credibility determination. Moreover, the ALJ noted that Yassin returned to work during the majority of 2010 and only quit because of a social conflict. While a plaintiff's physical ability to return to work does not per se suggest plaintiff should or could have returned to work at an earlier date, Sachs v. Comm'r of Soc. Sec., 567 F. Supp. 2d 423, 430 (W.D.N.Y. 2008), the record is devoid of evidence showing that Yassins voluntary termination of previous work was in any way related to his impairments. As such, the ALJ's credibility determination was supported by substantial evidence.

Lastly, Yassin contends that the ALJ erred in finding Yassin's statements not fully credible because they are inconsistent with the ALJ's own RFC finding. Pl.'s Mem. of Law at 15. "A claimant's credibility may be questioned if it is inconsistent with the medical evidence. However, it is improper to question the plaintiff's credibility because it is inconsistent with the RFC determined by the ALJ." Gehm v. Astrue, No. 10-CV-1170, 2013 WL 25976, at *5 (N.D.N.Y. Jan. 12, 2013) (footnote omitted) (Dkt. No. 10-1 at 78–82); Ubiles v. Astrue, No. 11-CV-6340T(MAT), 2012 WL 2572772, at *12

(W.D.N.Y. July 2, 2012) (collecting cases) (Dkt. No. 10-1 at 68–76).  SSR 96-7p

requires the ALJ to consider the entire case record in making a credibility determination.

Ubiles, 2012 WL 2572772, at *12.  Here, the ALJ first states that Yassin's "statements

concerning the intensity, persistence, and limiting effects of [his] symptoms are not

credible to the extent they are inconsistent with the above [RFC]."  Tr. at 23.  However,

the ALJ questioned Yassin's credibility in connection to the record medical evidence

when he stated, "the objective evidence does not indicate that the claimant's

impairments are as severe as alleged or that he is unable to do any work."  Id.

Furthermore, the RFC as found by the Commissioner is supported by substantial

evidence.  See Sanders v. Comm'r of Soc. Sec., 506 F. App'x 74, 78, n.5 (2d Cir. 2012)

(directing the ALJ to reassess credibility assessment on remand since the ALJ found

the claimant not completely credible because his statements were inconsistent with his

RFC, which was not supported by substantial evidence); Shepard v. Astrue, No. 11-CV-

0211 (LEK), 2013 WL 3243560, at *9 (N.D.N.Y. June 26, 2013) (same).

Accordingly, the Commissioner's decision on this issue should be affirmed.


### 3.  Step 4

The ALJ determined that Yassin could perform his past relevant job as a lens

inserter as well as, in the alternative, perform certain unskilled, light exertional work with

certain limitations.  Tr. 24–25.  The ALJ employed the expertise of a VE.

At step four of the disability analysis, plaintiff has the burden to show both an

inability to return both to his or her previous job as well as the former type of

employment.  Jock v. Harris, 651 F.2d 133, 135 (citations omitted).

21

> Thus, at the hearing level, the ALJ must, first, define the claimant's RFC and, second, determine whether this RFC will permit the claimant to meet the actual physical and mental demands of the type of work that she previously performed . . . . The ALJ may discharge his responsibilities with regard to the second prong by referring to the Dictionary of Occupational Titles (hereinafter "DOT") for a definition of a particular job as it is ordinarily performed throughout the national economy.

French v. Apfel, 62 F. Supp. 2d 659, 664 (N.D.N.Y. 1999) (citations omitted).

Categorization of employment demands require "explicit findings regarding the actual physical and mental demands of [p]laintiff's previous work." Id. (citations omitted).

In this case, the VE testified that Yassin's performed past work as a lens inserter at the sedentary exertional level. Tr. at 42. This involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles such as docket files, ledgers, and small tools. 20 C.F.R. § 416.967(a). Dr. Ali opined that Yassin should avoid activities requiring moderate or greater exertion and with Yassin's RFC, Yassin can do a range of light work with certain limitations. Thus, Yassin can perform the strength requirements of his past relevant work as a lens inserter.

Furthermore, the following discussion occurred between Yassin's counsel and the VE:

> Q:    . . . for the lens inserter position . . . is it not correct that as far as his language skills he would need to, according [to] the DOT a lens inserter needs to recognize the meaning of 2,500 two or three syllable words, read at a rate of 95 to 100 words per minute, compare similarities and differences between words, . . . speak simple sentences.
>
>       . . .
>
> A:    [The lens inserter position] is considered according to

> the DOT unskilled, simple and routine and I would say
> that it does require English.  It's really an assembler
> type of position.
>
> Q:     So that's based on your experience not the DOT?
>
> A:     Yes, also from the DOT, [INAUDIBLE] requirements.
>
> PL:    I think here is an important point [that] need[s] to be
>        addressed.  I was just trying to tell him about the
>        simple English knowledge.  He said what helped a lot
>        [was] that [the] employer was from an Arabic
>        background . . . .  The owners of the family all spoke
>        Arabic so that helped him.

Tr. 49–50.

The ALJ took into consideration Yassin's limited English abilities in Yassin's RFC and ability to do past relevant work.  Yassin's counsel's questioning of the VE demonstrated that Yassin's limited knowledge of the English language permits him to perform the duties of a lens inserter, regardless of whether Yassin returns to his previous job or the former type of employment.  <u>Jock</u>, 651 F.2d at 135.  Here, the record shows that Yassin could write more than his name in English and completed a disability report in English.  Tr. at 50, 138, 146–53.  Moreover, the VE explained that based on both the DOT and her thirty years of experience in disability management, her testimony was that a lens inserter is an assembler position requiring only limited English proficiency.  Tr. at 48, 104–06 (VE resume).  In light of the foregoing, the ALJ's decision on this point was supported by substantial evidence.

Accordingly, the Commissioner's decision on this issue should be affirmed.

## 4. Step 5

Yassin contends that because the ALJ's RFC and credibility determinations are erroneous, and the ALJ failed to determine the VE's reliability, the hypothetical posed to the VE was incomplete. Pl.'s Mem. of Law at 19.

The ALJ conducted his Step Five analysis. The ALJ may apply the Grids or consult a VE. See Heckler v. Campbell, 461 U.S. 458, 462 (1983); Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2 (2003). Here, a VE was questioned because the ALJ determined that Yassin's capacity to perform light work was limited by his non-exertional limitations. Tr. at 24.

> A hypothetical question that does not present the full extent of a claimant's impairments cannot provide a sound basis for vocational expert testimony . . . [thus i]f a hypothetical question does not include all . . . impairments, limitations and restrictions . . . a [VE's] response cannot constitute substantial evidence to support a conclusion of no disability.

Pardee v. Astrue, 631 F. Supp. 2d 200, 211 (N.D.N.Y. 2009) (citations omitted). As an initial matter, because the ALJ's RFC and credibility determinations are supported by substantial evidence and not improper, Yassin's only remaining claim under Step 5 is the ALJ's reliance on the VE's testimony and the alleged incompleteness of the hypothetical posed to the VE.

During his questioning of the VE, the ALJ presented a hypothetical question of an individual thirty-nine years of age with a high school education, cannot read and write English, can do light work, is limited to occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, must avoid concentrated exposure to the operational controls of moving machinery and unprotected heights as well as irritants

such as fumes, odors, dust, gases and poorly ventilated areas.  Tr. at 46.  The

hypothetical individual is further "limited to simple, routine, repetitive tasks involving only

simple work related decisions with few if any work place changes . . . [and] in a low

stress job defined as having only occasional decision making required and only

occasional changes in the work setting."  Id.  The VE concluded that the individual

would be restricted to light employment such as a ticket taker/usher, pricer/marker, and

cafeteria attendant, all of which exist in significant numbers in the national economy.

Tr. at 47–48.  The VE further testified that she would reduce the number of cafeteria

attendant jobs in the national economy as some of those positions require customer

contact.  Tr. at 48.  The ALJ asked whether the incorporation of "low stress" as a

consideration in the VE's opinion was set out in the DOT, to which the VE replied that

such incorporation is based on her own experience as the DOT does not classify that.

Tr. at 48–49.  When Yassin's counsel examined the VE, the discussion was:

> Q.    . . . for the ticket taker position, again, according to
> the DOT it says the language skills required are a
> passive vocabulary of 5,000 to 6,000 words, read at a
> rate of 190 to 215 words per minute, write compound
> and complex sentences, speak clearly and distinctly
> with appropriate pauses and emphasis, correct
> punctuation.  With your experience would a ticket
> taker need these skills or no?
>
> A.    No.
>
> Q.    A ticket taker wouldn't need to be able to
> communicate verbally with the customers.
>
> A.    They might need to tell them what movie theater to go
> to and to take the stubs but I don't think there's a lot
> of communication with that, no.
>
>       . . .

ALJ: . . . I understand thank you. . . . Tell him I understand and I'll take that into consideration when I make my decision in this case.

Q. . . . would such a ticket taker, would they need to be able to use the present and future tenses when they're speaking?

A. I don't think so.

Q. And that's based on your experience.

A. Yes.

. . .

Q. . . . I'm getting all this information from the DOT and it says . . . all these jobs you need to recognize thousands of words that he doesn't, he can't recognize while reading and he also needs to be able to speak . . . simple sentences and write simple sentences.

ALJ. All right . . . I'll take into consideration when I make the decision in this case.

Tr. 50–52.

Here too, the ALJ took into consideration Yassin's limited English abilities in Yassin's RFC and to do other work in the national economy. Yassin's counsel's questioning of the VE demonstrated that so long as Yassin could perform the duties of a ticket taker, particularly with limited customer contact, he would be able to perform the jobs which the VE identified. It is clear from the transcript that the VE gave her conclusions based on her extensive and relevant experience, despite that they are contrary to the DOT.

As substantial evidence supports the RFC findings which served as the basis of the

aforementioned hypothetical question, including any limitations with the English language, the ALJ appropriately relied upon the VE's testimony in concluding that Yassin could continue to work and find substantial gainful activity.  See Stenoski v. Astrue, No. 07-CV-552 (FJS/VEB), 2009 WL 6055830, at *11 (N.D.N.Y. July 23, 2009) (explaining that the VE's opinion regarding disability may be relied upon by the ALJ if the factors in the hypothetical are supported by substantial evidence) (citations omitted). This satisfied the Commissioner's burden at Step Five of the analysis.  As substantial evidence supports the ALJ's conclusions, remand for a calculation of benefits is unwarranted.

Accordingly, for these reasons, the Commissioner's decision on this issue should be affirmed.


### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that the Commissioner's decision denying disability benefits be **AFFIRMED**.

Pursuant to 28 U.S.C. §636(b)(1), the parties may lodge written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. §636(b)(1); FED. R. CIV. P. 72, 6(a), 6(e).

Dated: January 28, 2014
      Albany, New York

Christian F. Hummel
U.S. Magistrate Judge